[Civ. No. 8849.   First Appellate District, Division Two.—February 16, 1933.]

ERIC LYDERS, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Sawyer & Cluff, James F. Brennan, John J. McMahon and Milton H. Silverberg for Petitioner.

Herbert W. Clark, C. Coolidge Kreis and Morrison, Hohfeld, Foerster, Shuman & Clark for Respondents.

STURTEVANT, J.—The petitioner commenced a proceeding asking a writ of mandate directed to Department Four of the Superior Court of the State of California in and for the City and County of San Francisco and the judge thereof, directing them to approve an undertaking theretofore tendered as a stay bond on appeal. The respondents answered and the parties have submitted a stipulation of facts.

Heretofore five different actions were commenced by Inger Marie Petersen et al. against Eric Lyders and judgment was obtained in the sum of $16,058.13. A motion to tax costs and a motion for a new trial were made but both motions were denied. Thereupon the defendant served a notice of appeal. On September 6, 1932, he filed an undertaking in the sum of $32,116.26, double the amount of the judgment appealed from, and the said undertaking was executed by Benjamin Franklin Bond & Indemnity Corporation, a corporation organized under the laws of the state of Arizona

and at that time doing business in the state of California. In due time the plaintiffs in said actions served their notice excepting to the sufficiency of the surety. On September 19, 1932, the hearing of the justification commenced. It was continued from time to time until the twenty-fourth day of October, 1932. On that date the bonding company appeared and submitted to the court first, a certified copy of the power of attorney showing the authority of J. H. Miller to execute the said undertaking; second, a certified copy certified September 19, 1932, of the certificate of authority issued by the insurance commissioner of the state of California; third, a certificate from the county clerk of the city and county of San Francisco showing that the certificate of authority had not, on October 24, 1932, been surrendered, revoked, canceled, annulled or suspended; and fourth, a financial statement showing the assets and liabilities of said Benjamin Franklin Bond & Indemnity Corporation at the end of the quarter calendar year prior to thirty days next preceding the date of the execution of said undertaking, but said last-named document was not verified under oath by the president or vice-president and attested by the secretary or assistant secretary of said corporation. The hearing was again continued until October 25, 1932. On that date a certificate in due form was tendered under the fourth division. At the same time a new certificate under the third division was submitted showing that the certificate of authority had been suspended but had been renewed, and that said renewed certificate had not been surrendered, etc. At the same hearing the plaintiffs offered the testimony of Lawrence Rouble, an examiner in the office of the insurance commissioner of the state of California, tending to impeach the bonding company's financial statement tendered under the fourth division. To that evidence numerous objections were made but they were overruled subject to a motion to strike. Among other things it transpired that the bonding company was in the act of tendering to the insurance commissioner additional securities for the purpose of eliminating any question regarding its solvency. The hearing was therefore continued until November 14, 1932. On the latter date a motion to strike the testimony of the witness Rouble was renewed. It was not ruled on. On the same date the plaintiffs introduced in evidence a certificate of the county

clerk under date of November 14, 1932, showing that the renewed certificate of authority of the bonding company was suspended by the insurance commissioner on November 10, 1932, and that the certificate of authority had not since been renewed. Thereafter the court denied the motion for justification of the surety in each cause so pending before it.

The respondents make a preliminary objection that *mandamus* is not the proper remedy. They contend that the petitioner had the right to appeal from the refusal of the judge to approve the bond, claiming the refusal was an order made after final judgment. (Code Civ. Proc., sec. 963, subd. 2.) The petitioner's reply is that in at least two cases a proceeding in *mandamus* was approved as a proper remedy. (*San Francisco-Oakland Terminal Rys.* v. *Superior Court,* 48 Cal. App. 586 [192 Pac. 116], and *Central Holding Corp.* v. *Superior Court,* 122 Cal. App. 515 [10 Pac. (2d) 514].) To that contention the respondents reply that neither of those cases involved an appealable order. To this the petitioner replies that neither was the ruling under attack in the instant case an appealable order. He cites and relies on *Lake* v. *Harris,* 198 Cal. 85 [243 Pac. 417]. Continuing he claims that even though the order was appealable the right of appeal is inadequate. Both contentions of the petitioner we think are well founded. As will more fully appear as we proceed, we think the right to appeal even if one existed is inadequate for the purpose of protecting either party in his statutory rights to a good and sufficient bond on appeal.

The petitioner complains because the witness Rouble was allowed to give oral testimony. Conceding that such procedure was irregular (*Central Holding Corp.* v. *Superior Court, supra*), it will likewise be conceded that the respondent court, having taken up the hearing, rulings on the admission or exclusion of evidence may not be attacked by a *mandamus* proceeding. (16 Cal. Jur. 822.) It is not a writ of error.

Again it is claimed that on October 25, 1932, the showing on the part of the bonding company was wholly complete and that the respondent judge should have approved the bonds on that date. In this connection the petitioner contends the sufficiency of the appeal bond was to be ascertained as of the date the bond was signed. With

this contention we cannot agree. Bonds on appeal from judgments of the superior court are provided for in Code of Civil Procedure, section 942 et seq. It is provided that each bond will be executed by two or more sureties. The right to except to the sufficiency of the sureties is addressed to all of such bonds. (Code Civ. Proc., sec. 948.) The foregoing provisions in substance have been incorporated in the law since 1850. Commencing in 1889 legislation has been enacted, from time to time, authorizing certain corporations to become sole sureties. Whether the surety is a natural or an artificial person, when he or it attempts to justify, no distinction is made in the statute as to the specific date as of which his or its showing must be made. If on the date of the hearing it transpired that a surety was abundantly solvent on the day he signed but was insolvent on the date of the hearing, he should not be accepted. To act otherwise would be to defeat the general policy of the law. In *Fox* v. *Hale & Norcross S. M. Co.,* 97 Cal. 353, at page 358 [32 Pac. 446, 447], the late Chief Justice Beatty, speaking for the court, said: "But to allow this clause of the act such unlimited operation would defeat *its general policy, which is, undoubtedly, to provide ample security for money judgments in order to stay proceedings for their enforcement pending appeals."* (Italics ours.) The proceeding before the court had its foundation in section 948 of the Code of Civil Procedure, which provides for exceptions to sureties. Section 954 of the Code of Civil Procedure provides that after a bond is given if the sureties become insufficient on an application duly made the court will order a new bond given. If the contention of the petitioner is sound it follows that at the time of the hearing it was the duty of the respondent court to approve the bond then before it, and then entertain a motion by the plaintiffs under section 954 of the Code of Civil Procedure, directing the defendants to file a new bond. But the law neither does nor requires idle acts. (Civ. Code, sec. 3532.)

It is next claimed by the petitioner that, without receding from the foregoing contention, the suspension of the certificate of authority was made at a time not contemplated by the statute. To that claim there are two separate replies. It is not claimed that any such claimed irregularity existed on the face of the certificate of the county

clerk dated November 14, 1932. That certificate, being regular in all respects on its face, ends the matter. Because, as this petitioner contends and as we have conceded above, on a complete showing made under Code of Civil Procedure, section 1057a, the respondent court was compelled to act—whether the action was for or against the surety company. (Code Civ. Proc., sec. 1057a; *Central Holding Corp.* v. *Superior Court, supra.*) █ The other reply is on the merits. The petitioner quotes Code of Civil Procedure, section 1056, as follows: "And whenever the liabilities of any such corporation shall exceed its assets, the insurance commissioner shall require the deficiency to be paid up in sixty days, and if it is not so paid up, then he shall issue a certificate showing the extent of such deficiency, and he shall publish the same once a week for three weeks in a daily San Francisco paper. And until such deficiency is paid up such company shall not do business in this state." As shown by the stipulation, on October 8, 1932, the insurance commissioner notified the surety company that its liabilities exceeded its assets on July 31, 1932, in the sum of $110,000. The petitioner argues that the surety company had until December 7, 1932, within which to make up the deficiency before its certificate of authority could be revoked. This reasoning is not persuasive. It will be freely conceded the language quoted from section 1056 of the Code of Civil Procedure is not altogether clear and certain in its terms. The insurance commissioner, however, interpreted the section as providing that from the date of his notice until the deficiency should be made up the company should not do any new business. We are unable to say he erred in his interpretation of the statute. In the instant case to adopt the contention of the petitioner is to hold that a surety company whose liabilities exceeded its assets in the sum of $110,000 was entitled after that fact had been duly ascertained to continue to write new business for the period of sixty days. Numerous courts have said: "Mere philology often sticks in the bark, and so becomes an obstruction rather than an aid to a correct exposition of the meaning of the statute." In the case of *Fox* v. *Hale & Norcross S. M. Co., supra,* the court was considering sections 1056 and 1057 of the Code of Civil Procedure as they were worded in 1893. The bond required was in the sum of

$2,030,000. A surety company solvent in all respects but having a capital of only $100,000 claimed it should be accepted as sole surety in full .compliance with all the provisions of the statute. Having quoted the two sections, on page 357 the court said: "No doubt they must be allowed some operation; but if it is possible to find a meaning for them which will justify their insertion in the statute without convicting the legislature of having enacted an absurdity, they must be limited to such meaning; or in other words, if the apparent object and policy of the law is subserved by taking them in a qualified and restricted sense, while one of its principal objects is utterly defeated by giving them their largest possible significance, the former interpretation must be preferred." And later, on page 358, the court said: "But to allow this clause of the act such unlimited operation would defeat its general policy, which is, undoubtedly, to provide ample security for money judgments in order to stay proceedings for their enforcement pending appeals." The same reasoning applies to the instant case. It is absurd to hold that the legislature in the absence of very clear words to that effect has provided that for a period of sixty days an insolvent surety company may write new business, that the insurance commissioner cannot stop it, and the courts cannot do otherwise than approve its bonds.

In this same connection the petitioner quotes and relies on next to the last paragraph of section 633d of 1 Deering's Political Code, page 319, as follows:

"If at any time the insurance commissioner revokes or suspends the license theretofore issued to a company or other insurer, the company or other insurer, whose license to do business in this state has been so revoked or suspended, may commence an action against the insurance commissioner for the purpose of reviewing the facts pertinent to the controversy and for the purpose of obtaining relief or canceling the act of the insurance commissioner. In any such action, the court shall have full power to investigate all the facts *de novo*, without regard to the determination previously made by the insurance commissioner. Pending final determination by the courts of such controversy, the right of the company or other insurer whose license to do business in

the state of California has been revoked or suspended, shall remain unimpaired."

The passage is not pertinent to the instant case. In this state insurance may be furnished by or through agents, brokers or solicitors. Each such person is by law required to obtain a license. The section cited applies to such persons. Such persons, and only such persons, are "licensed" within the meaning of the insurance statutes of this state. On the other hand an insurance company is allowed to act by reason of its "certificate of authority". As to the power to suspend the "certificate of authority" of a surety company, the statute governing the power is Code of Civil Procedure, section 1056, and not 633d of the Political Code [as added by Stats. 1923, p. 728].

It follows that the bonding company did not justify as required by section 1057a of the Code of Civil Procedure.

The application for a writ of *mandamus* is denied.

Spence, Acting P. J., and Goodell, J., *pro tem.*, concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 17, 1933.